UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMANDA ARROYO<br>On behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br> v.<br><br>PROGRESSIVE QUALITY CARE, INC., et al.,<br><br>    Defendants. | CASE NO. 1:24-cv-693<br><br>JUDGE DAN AARON POLSTER<br><br>**JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT** |

  Plaintiffs Amanda Arroyo and Elizabeth Dorn and Defendants Progressive Quality Care, Inc. and Progressive North Ridgeville, LLC respectfully and jointly move the Court to (1) conditionally certify this case as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), (2) approve the proposed settlement of FLSA claims for the potential Opt-Ins who join the case pursuant to § 216(b), and (3) approve a proposed notice to potential Opt-Ins.  A proposed Approval Order is attached.

  The terms of the proposed settlement are set forth in the parties' Settlement Agreement attached as Exhibit 1.  The settlement will apply to Plaintiffs Arroyo and Dorn, current Opt-Ins Nikita Johnson and Victoria Cressman, and any Opt-ins who join after issuance of notice, a proposed version of which is attached as Exhibit 3.  The Potential Opt-Ins consist of:

> Current and former State Tested Nursing Assistants who, according to records produced by Defendants, worked more than forty hours at Progressive North Ridgeville, LLC, Progressive Aurora, LLC, Progressive Broadview Heights, LLC, Progressive Brooklyn, LLC, Progressive Interchange, LLC, Progressive Lyndhurst, LLC, Progressive Macedonia, LLC, Progressive Medina, LLC, Progressive Parma Care, LLC, Progressive Strongsville, LLC, or Progressive Wooster, LLC in one or more workweeks between June 1, 2022 and May 31, 2024.

*See* Settlement Agreement, at Exhibit 1, ¶ 4. These individuals are identified in the Roster of Potential Opt-Ins jointly prepared by the parties and attached as Appendix A to the parties' Settlement Agreement.

The settlement will resolve bona fide disputes involving wages and overtime compensation under the FLSA. Plaintiffs alleged that they and other similarly-situated employees were underpaid for hourly wages and/or overtime compensation. Defendants denied those claims.

The parties are represented by experienced counsel. Extensive investigation was conducted on both sides and settlement negotiations were rigorous, including a full-day mediation session with Magistrate Judge Greenberg. The parties believe the resulting agreement appropriately balances the expenses, risks, and possible outcomes of protracted litigation on the merits. For the Plaintiffs and Opt-Ins, the settlement will eliminate the risk and delay of litigation and make payments available to all persons believed to be entitled to them.

The following settlement documents and proposed order are submitted for review and entry by the Court:

    Exhibit 1:    Agreement of Settlement and Release ("Settlement Agreement")

    Appendix :    Roster of Potential Opt-Ins

    Exhibit 2:    Proposed Notice to Potential Opt-Ins

    Exhibit 3:    Declarations of Plaintiffs' Counsel

    Exhibit 4:    Proposed Final Order

    Exhibit 5:    Unopposed Motion to File Under Seal

The sections below explain the litigation, the negotiations, the settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

# THE LITIGATION

## A. The Claims and Issues

Plaintiff Arroyo, an STNA at Progressive North Ridgeville, LLC filed a putative Class and Collective Action Complaint against Defendants (ECF #1) on August 17, 2022. Arroyo alleged that she and other similarly-situated hourly employees at Progressive North Ridgeville, LLC, Progressive Aurora, LLC, Progressive Broadview Heights, LLC, Progressive Brooklyn, LLC, Progressive Interchange, LLC, Progressive Lyndhurst, LLC, Progressive Macedonia, LLC, Progressive Medina, LLC, Progressive Parma Care, LLC, Progressive Strongsville, LLC, and Progressive Wooster, LLC were not paid one and one-half their regular rate of pay for all overtime hours. Specifically, Arroyo alleged that Defendants failed to include all remuneration required by 29 U.S.C. § 207(e) when calculating her regular rate of pay.

Plaintiff Dorn, also an STNA at Progressive North Ridgeville, LLC, filed her putative Collective Action lawsuit on May 3, 2024 against Defendant Progressive Quality Care, Inc. in Northern District of Ohio Case No. 1:24-cv-00797. Dorn alleged that she and similarly situated employees at Progressive North Ridgeville, LLC Progressive Aurora, LLC, Progressive Broadview Heights, LLC, Progressive Brooklyn, LLC, Progressive Interchange, LLC, Progressive Lyndhurst, LLC, Progressive Macedonia, LLC, Progressive Medina, LLC, Progressive Parma Care, LLC, Progressive Strongsville, LLC, and Progressive Wooster, LLC were not paid for all hours that they were "suffer[ed] or permit[ted] to work." 29 U.S.C. § 203(g). Specifically, Dorn alleged that half-hour meal break periods were deducted from her pay on a daily basis, even on days that she was not completely relieved from duty for any such period.

Defendants denied Plaintiffs' claims, as set forth in their Answers filed on June 18, 2024 (ECF #8) in *Arroyo* and on June 5, 2024 in *Dorn* (ECF #7).

Additional opt-in Plaintiffs joined both actions shortly after filing. Nikita Johnson joined *Arroyo* via consent filed pursuant to 29 U.S.C. § 216 on June 17, 2024 (ECF #7 in *Arroyo*), and Victoria Cressman did the same in *Dorn* on July 11, 2024 (ECF #15 in *Dorn*)

### B.     Exchange of Records and Mediation

In *Arroyo*, the parties promptly discussed referral to mediation after exchange of sufficient discovery necessary for the parties to evaluate their respective settlement positions. After agreeing to exchange the materials necessary for the parties to fully and meaningfully analyze the strengths and weaknesses of their positions, the *Arroyo* parties jointly asked the Court for a referral to mediation, which was ordered for September 13, 2024.

Both of Plaintiffs' counsel (Arroyo's and Dorn's) had conducted extensive investigation before filing this case, including by analyzing time and pay records of the named Plaintiffs and their coworkers. In order to conduct further due diligence as to Defendants' potential liability and exposure, after suit was filed Plaintiff Arroyo requested, and Defendants produced: (1) complete electronic pay records for the STNAs working at all of their nursing facilities from June 1, 2022 – May 31, 2024, and (2) complete timeclock punch records the for the STNAs working at all of their nursing facilities from June 1, 2022 – May 31, 2024.

Those records first enabled the parties to solidly estimate the value on Amanda Arroyo's claim for the entire affected class; the only modest imprecision resulting from Defendants' pay data being biweekly, whereas the FLSA operates on a workweek-by-workweek basis.

As the *Arroyo* parties prepared for the mediation, counsel for Arroyo and Dorn consulted about merging the two cases and negotiating both simultaneously with Magistrate Judge Greenberg on September 13, 2024. Plaintiffs' and Defendants' counsel discussed that potentiality

4

in the weeks preceding the mediation, and also provided Dorn's counsel the records previously produced to Arroyo's counsel.

The records enabled the parties to reasonably estimate damages on the *Dorn* case as well, and all counsel agreed that a mediation involving all parties would be most beneficial.

### C. Mediation and Negotiation

On September 13, 2024, the parties proceeded to mediation before Magistrate Judge Greenberg. After a full day of mediation, the parties agreed upon a global settlement of the *Arroyo* and *Dorn* cases in the amount set forth in the unredacted settlement agreement field under seal. The parties moved for the cases to be consolidated for the proposed settlement to be effectuated and, on September 27, 2024, the courts consolidated the cases into *Arroyo v. Progressive Quality Care, Inc.*

The proposed settlement resulted from negotiations as to the settlement's amount and mutual consideration of its structure. The parties believe the settlement appropriately balances the expenses, risks, and possible outcomes of protracted litigation. For the Plaintiffs and the Opt-Ins, the proposed settlement will eliminate the risk and delay of litigation and make substantial payments available to all persons believed to have been affected by the alleged pay practices.

## THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS
### A. The Scope of Settlement

The proposed settlement will resolve the wage-and-hour claims of Plaintiffs Arroyo and Dorn, Opt-In Plaintiffs Johnson and Cressman, and all similarly-situated employees who consent to become parties to the case and settlement pursuant to 29 U.S.C. § 216(b).

### B. Certification of the Collective

FLSA plaintiffs and opt-ins must be "similarly situated to proceed collectively under 29 U.S.C. 216(b). In assessing whether a putative collective action group is similarly situated, the Court must analyze "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir.2017). Employees are similarly situated to each other when their claims "are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 398.

All Potential Opt-Ins are similarly situated to the Named Plaintiffs because their factual and employment settings are similar with respect to the issues in this case. *Declaration of Plaintiff's Counsel*, at Exhibit 3, ¶ 6. The potential defenses to each of Plaintiff's claims are also the same for the whole collective group.

Finally, as all parties jointly request certification, the fairness and procedural impact factor weighs in favor of allowing the case to proceed collectively. The proposed certification and settlement offer an excellent recovery to all affected STNAs, and curtails this litigation and concomitant fees for Defendants. *Declaration of Plaintiff's Counsel*, at Exhibit 3, ¶ 6.

### C. The Proposed Settlement Payments and Distributions

Total Settlement Amount. Defendants have agreed to pay the total Settlement Amount. The Settlement Amount, after deduction of a Service Award and Attorneys' Fees (the "Net Proceeds"), will be made available to the Plaintiff and the Opt-Ins in individual settlement payments as follows.

The proposed method of allocating the settlement payments is reasonable and fair to all. The potential Opt-Ins consist of those STNAs shown by timekeeping and pay records to have worked more than 40 hours in a workweek between June 1, 2022 and May 31, 2024. Hence, only those STNAs who actually suffered damages, assuming the merit of Plaintiffs' claims, will receive settlement payments. The Net Proceeds will further be allocated to the Plaintiff and Opt-Ins in proportion to their unpaid overtime and meal break compensation as calculated by Plaintiffs' counsel.

Service Award. The proposed settlement provides for service awards to Plaintiff Amanda Arroyo to Plaintiff Elizabeth Dorn in recognition of their assistance to Plaintiff's Counsel and their vital contribution to achieving the settlement on behalf of all Opt-Ins.

Attorneys' Fees and Cost Reimbursements. The proposed settlement includes a payment to Plaintiffs' counsel for attorneys' fees and reimbursement of litigation costs.

## THE PROPRIETY OF APPROVAL

As to the Plaintiffs and Opt-Ins, the settlement must qualify for Court approval under the FLSA, 29 U.S.C. § 216(b). The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate." *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012) (accord *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 381-82 (S.D. Ohio 2006)); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

The proposed settlement satisfies all of these prerequisites and standards for purposes of this settlement, as shown below.

### A. The Settlement Is Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court must "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999))). *Accord*, *Kis,* 2020 U.S. Dist. LEXIS 93929, at *12.

In *Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed the seven-factor standard often used to evaluate whether a class settlement is "fair, reasonable, and adequate":

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

Id. at at 276-77. (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19-20 (S.D. Ohio May 30, 2012) (using a variation of the seven-factor standard to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b)). *See also Crawford v. Lexington-Fayette Urban County Government*, No. 06-299, 2008 U.S. Dist. LEXIS 90070, at *3 (E.D. Ky. Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). That test is

also used in the Sixth Circuit in weighing the approval of proposed FLSA collective action settlements. *Thompson v. Seagle Pizza, Inc.*, 2022 U.S. Dist. LEXIS 81666, at *12 (W.D.Ky. May 4, 2022) ("Because FLSA settlements must likewise be 'fair and reasonable,' courts in the Sixth Circuit apply this seven-factor test when reviewing such settlements as well.") (citing *Burnham v. Papa John's Paducah, LLC*, No. 5:18-cv-112, 2020 U.S. Dist. LEXIS 75220, at *2 (W.D. Ky. Apr. 29, 2020)).

All factors weigh in favor of approval. With respect to the first factor, the parties are genuine adversaries and negotiated this settlement at arms-length with the assistance of a mediation. With regard to the second and fourth factors, litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendants' liability, which Defendants vehemently deny, but also the Opt-Ins' damages. With respect to the third factor, the parties engaged in adequate discovery to fully flesh out the strengths and weaknesses of their respective positions. With respect to the fifth factor, the proposed Settlement will eliminate the risk and delay of litigation and make settlement payments available to the Opt-Ins who qualify for payments under the terms of the Settlement. With respect to the sixth factor, as this settlement is opt-in only, there are no absent class members whose rights will be affected. Finally, with respect to the last factor, this settlement terminates this litigation and promotes the FLSA's remedial purposes. Thus, the settlement is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation").

    **B.**    **The Settlement Payments Are Fair, Reasonable, and Adequate**

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999))). *Accord*, *Kis,* 2020 U.S. Dist. LEXIS 93929, at *12. In the present case, the proposed settlement will make individual settlement payments available to the Plaintiff and Opt-Ins according to a fair and reasonable method of allocation. The Opt-Ins will receive an excellent recovery, constituting their full actual damages plus an additional 25% liquidated damages utilizing all assumptions in favor of the Opt-Ins as to the *Arroyo* claims, and assuming that Opt-Ins worked during 25% of their automatically deducted meal break periods. The proceeds will be allocated in accordance with damages sustained by Opt-Ins as estimated and calculated by Plaintiffs' counsel.

    **C.**     <u>**The Proposed Service Award is Proper and Reasonable**</u>

Reasonable service awards "are common in class action settlement[s] and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09-cv-1608, 2010 WL 2490989, at *7). *Accord In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373 (S.D. Ohio 1990). Service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

In the present case, the proposed service award to both Plaintiffs is amply justified by their assistance to Plaintiffs' Counsel and their vital contribution to achieving the settlement on behalf of all Opt-Ins.

### D. The Attorneys' Fees Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). *See Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994); *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

In the present case, the proposed payment for attorneys' fees and reimbursed litigation costs are reasonable, and well in accord with fees routinely awarded in the Sixth Circuit. *See Dillworth v. Case Farms Processing, Inc.*, No.: 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *21 (N.D. Ohio Mar. 8, 2010) (study conducted by the National Economic Research Associates found that "regardless of size, attorneys' fees average approximately 32% of [class action] settlement[s]"); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) (citing the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date"). *See also Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018) ("[o]ne-third of the common fund is a reasonable attorneys' fee award "and has been approved in similar FLSA collective actions in this judicial district.") (citing *Rotuna v. W. Customer Mgmt. Grp., LLC,* No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, at *7 (N.D. Ohio June 15, 2010)).

### E. The Proposed Notice Should Be Approved

11

The proposed Notice to Potential Opt-Ins ("Notice") attached at Exhibit 3 should be approved. The Notice describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments in return for a release.

The proposed Notice is "timely, accurate, and informative," and therefore should be approved. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Using regular mail and electronic mail to disperse notice will increase the likelihood that putative collective members will receive notice, while reducing the total cost.

This method has been approved by District Courts in Ohio on numerous occasions. *See, e.g. Hawkins v. Extended Life Home Care, Ltd.*, No. 2:18-cv-344, 2019 U.S. Dist. LEXIS 30887, *9 (S.D. Ohio 2019) (noting that the trend has been to permit sending notice by regular mail and email to ensure potential plaintiffs receive notice of the pending FLSA action); *Slaughter v. Lincoln Elec. Co.,* No. 1:18-cv-2705, 2019 U.S. Dist. LEXIS 173762, *27 (N.D. Ohio Oct. 7, 2019) ("the Notice shall be sent to the potential opt-ins within thirty (30) days using the home and email addresses provided by the Defendant."); *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 U.S. Dist. LEXIS 164312, *32 (S.D. Ohio Sept. 25, 2019) ("The Court is mindful of the need to balance affording putative class members the opportunity to participate in the collective action while not badgering them to do so. Accordingly, the Court permits the Notice and Consent form to be sent via U.S. mail and e-mail to all putative class members.").

As set forth in the Notice, the parties request opt-in period of thirty days, which will adequately balance the interests of permitting potential Opt-Ins sufficient time to explore participation and permit this matter to be concluded.

## CONCLUSION

For the reasons addressed above, the parties respectfully request that the Court enter the Proposed Approval Order, attached as Exhibit 4.

| | |
|---|---|
| */s/ Hans A. Nilges* <br> HANS A. NILGES (0076017) <br> **NILGES DRAHER LLC** <br> 7034 Braucher Street NW, Suite B <br> North Canton, OH 44720 <br> Phone: 330-470-4428 <br> Fax: 330-754-1430 <br> Email: hnilges@ohlaborlaw.com <br><br> */s/ Scott D. Perlmuter* <br> SCOTT D. PERLMUTER (0082856) <br> **TITTLE & PERLMUTER** <br> 4106 Bridge Avenue <br> Cleveland, OH 44113 <br> Phone: 216-285-9991 <br> Fax: 888-604-9299 <br> Email: scott@tittlelawfirm.com <br><br> *Attorneys for Plaintiffs* | */s/ Andrew J. Yarger* <br> Steve Potter (0001513) <br> Andrew Yarger (0086919) <br> 6105 Parkland Boulevard, Suite 100 <br> Cleveland, OH 44124 <br> Phone: 440-446-1100 <br> Fax: 440-446-1240 <br> Email: spotter@dhplaw.com <br>       ayarger@dhplaw.com <br><br> *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2024 the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Andrew J. Yarger*
Andrew J. Yarger

*Counsel for Defendants*
